UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 JUN -6 PM 2: 17

CLERK
LAW
BY_____
DEPUTY CLERK

DEVEN BARRETTE,                          )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )        Case No. 2:22-cv-00129
                                         )
VILLAGE OF SWANTON, VERMONT              )
DEPARTMENT OF CORRECTIONS,               )
HOWARD CENTER, INC., d/b/a/ HOWARD       )
CENTER, KYLE GAGNE, ROBERT               )
RECORE, LEONARD STELL, RICHARD           )
ROWDEN II, JORDAN MICHAEL                )
MOSHER, ALYX TUTTLE, MICHAEL             )
BEYOR, and JOHN AND JANE DOES I-X,       )
                                         )
        Defendants.                      )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS AND GRANTING LEAVE TO AMEND**
(Docs. 22, 27, 28, & 29)

Plaintiff Deven Barrette ("Plaintiff") brings this action against Defendants the Village of Swanton; the Vermont Department of Corrections ("VDOC"); Howard Center, Inc., doing business as Howard Center (the "Howard Center"); Robert Recore ("Defendant Recore"); Kyle Gagne ("Defendant Gagne"); Leonard Stell ("Defendant Stell"); Richard Rowden, II ("Defendant Rowden"); Jordan M. Mosher ("Defendant Mosher"); Alyx Tuttle ("Defendant Tuttle"); and Michael Beyor ("Defendant Beyor") (collectively, with VDOC and Defendants Rowden and Tuttle, the "VDOC Defendants"); as well as against John Does I-X (the "Doe Defendants").

Plaintiff's claims arise from his detention by Swanton Village Police Department ("SVPD") officers on the night of April 1, 2020 and subsequent treatment by those officers and Northwest State Correctional Facility ("NSCF") employees. Plaintiff filed a Complaint on June 9, 2022 asserting nine claims: violation of his Fourth and Fourteenth

Amendment rights against excessive force under 42 U.S.C. § 1983 against Defendants
Recore, Gagne, Mosher, Rowden, Tuttle, Beyor, and the VDOC-affiliated Doe
Defendants (Count I); violation of his Fourth and Fourteenth Amendment rights against
unlawful detention or seizure under 42 U.S.C. § 1983 against Defendants Recore, Gagne,
Mosher, Rowden, Tuttle, Beyor, and the VDOC-affiliated Doe Defendants (Count II);
violation of his Fourth and Fourteenth Amendment rights against unlawful imprisonment
under 42 U.S.C. § 1983 against Defendants Recore, Gagne, Mosher, Rowden, Tuttle,
Beyor, and the VDOC-affiliated Doe Defendants (Count III); unconstitutional policies,
customs, and practices under 42 U.S.C. § 1983 against the Village of Swanton (Count
IV); assault and battery against Defendants Recore, Gagne, Mosher, Rowden, Tuttle,
Beyor, and the VDOC-affiliated Doe Defendants (Count V); violation of the Vermont
Constitution, Chapter 1, Article 11 against the Village of Swanton and the VDOC (Count
VI); intentional infliction of emotional distress against Defendants Recore, Gagne,
Mosher, Rowden, Tuttle, Beyor, and the VDOC-affiliated Doe Defendants (Count VII);
negligence against the Howard Center and Doe Defendants (Count VIII), and breach of
fiduciary duty against the Howard Center and Doe Defendants (Count IX).

On August 12, 2022, Defendant Mosher filed a partial motion to dismiss pursuant
to Fed. R. Civ. P. 12(b)(6). (Doc. 22.) Plaintiff responded on September 30, 2022 (Doc.
38), and Defendant Mosher replied on October 12, 2022. (Doc. 42.) On August 22, 2022,
several Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and
12(b)(6). (Doc. 28.) Plaintiff responded on September 30, 2022 (Doc. 36), and the
Defendants replied on October 21, 2022. (Doc. 48.) On August 23, 2022, the Howard
Center filed a motion to dismiss. (Doc. 29.) Plaintiff responded on September 30, 2022
(Doc. 35), and the Howard Center replied on October 14, 2022. (Doc. 44.) Plaintiff filed
a sur-reply on October 27, 2022. (Doc. 49.) The court held a hearing on the pending
motions on December 22, 2022, at which time it took the motions under advisement.

Plaintiff is represented by David Shlansky, Esq. The Village of Swanton and
Defendants Gagne and Stell are represented by James F. Carroll, Esq. VDOC Defendants
are represented by Michelle T. Bennett, Esq. The Howard Center is represented by

Richard J. Windish, Esq. Defendant Recore is represented by Brian P. Monaghan, Esq. Defendant Mosher is represented by Andrew C. Boxer, Esq. and Oliver A. Abbott, Esq.

## I.   Allegations in Plaintiff's Complaint.

Plaintiff resides in Vermont and asserts claims arising out of his arrest and detention. At the time of the alleged events, Defendants Recore and Gagne were SVPD officers, and Defendant Stell was the SVPD Police Chief. The VDOC is a Vermont state agency. Defendants Rowden and Mosher are Correctional Facility Shift Supervisors at NSCF in Swanton, Vermont. Defendant Tuttle is a Correctional Officer at NSCF, and Defendant Beyor is a Superintendent at the same facility.

The Howard Center is a non-profit corporation registered in Vermont with its principal place of business in Burlington, Vermont. The Village of Swanton is a Vermont municipal corporation. The Doe Defendants are "natural persons who have been involved in the wrongful actions alleged in this Complaint, including unknown Howard Center and [V]DOC agents." (Doc. 1 at 7, ¶ 22.)

### A.   Defendants Recore and Gagne Take Plaintiff into Custody.

On April 1, 2020, Plaintiff had ankle surgery for a "serious injury." *Id.* at 8, ¶ 27. Later that evening, Plaintiff played cards and drank alcohol with his girlfriend and a friend at the friend's house in Swanton, Vermont. During the game, Plaintiff became upset by the pain caused by his surgical wound and began yelling, prompting his girlfriend to call the SVPD at approximately 9:35 p.m.

Plaintiff called his roommate to ask for a ride home before his girlfriend called the police. He alleges that despite being under the influence of alcohol and wearing a knee-high cast-boot on one leg, he was able to talk and walk. Plaintiff left his friend's house and began walking to a gas station across the street to wait for his roommate to pick him up. He alleges that he was "calmly and responsibly awaiting his ride" and was neither armed nor belligerent. *Id.* at 8, ¶ 31.

At approximately 9:52 p.m., Plaintiff was pursued on foot and then stopped by Defendants Recore and Gagne, with whom he has had past encounters. The officers made statements such as, "We can't let you walk[,]" "We're going to make sure you're safe[,]"

3

and "I'm just trying to get you home here." *Id.* at 9, ¶ 33 (internal quotation marks omitted). Plaintiff alleges that Defendants Recore and Gagne made these statements in bad faith because they knew Plaintiff's home address, knew that he had a friend coming to give him a ride home, and had no probable cause to believe that he was committing any crime or posing a danger to anyone else. Audio and video evidence allegedly "shows that [Defendants Recore and Gagne] did not perceive any serious risk and knew [Plaintiff] was harmless." *Id.* ¶ 34.

After Plaintiff refused their help, Defendants Recore and Gagne tackled Plaintiff to the ground and forced him into the back of a police cruiser. Defendant Gagne's official report of the incident states:

> I arrived on scene and observed a male who I know from previous[]
> professional encounters as Deven Barrette. After briefly speaking with
> Barrette I observed indicators of intoxication. Barrette then walked away
> from me and I followed him. . . . Patrolman Recore and I grabbed Barrette
> to take him into protective custody. Barrette briefly resisted and was taken
> into custody. Barrette was transported to Detox where he was denied and
> ultimately brought to Northwest State Correction Facility. Nothing Further.

*Id.* ¶ 37 (alteration in original) (emphasis omitted).

Plaintiff alleges that the officers were aware that he had a broken ankle and open surgical wound, "including because of his knee-high cast-boot[,]" before putting him into a police cruiser which could not accommodate his injuries. (Doc. 1 at 10, ¶ 38.) Plaintiff's roommate arrived at the gas station during Plaintiff's interaction with Defendants Recore and Gagne and saw Plaintiff in the back of the police cruiser as it drove away.

Plaintiff contends that because Defendant Gagne wrote in his police report that Plaintiff was "intoxicated[,]" under Vermont law, Defendant Gagne could only "assist" Plaintiff with his consent. *Id.* ¶ 44 (citing 18 V.S.A. § 4810(a)) (internal quotation marks omitted). Plaintiff alleges that he was not "incapacitated" under 18 V.S.A. § 4802 and thus was not subject to law enforcement intervention pursuant to 18 V.S.A. § 4810, which allows officers to take incapacitated individuals into protective custody. *Id.* at 11, ¶¶ 46-48 (internal quotation marks omitted). He points out that Vermont law would only

allow law enforcement to take him to a correctional facility if a qualified evaluator determined that he was "indeed incapacitated." *Id.* at 11-12, ¶¶ 48-49 (internal quotation marks omitted).

## B.     The Howard Center.

Plaintiff alleges that Defendants Recore and Gagne prevented him from returning to his home and instead drove him a longer distance to the Howard Center's substance abuse treatment and recovery facility in St. Albans, Vermont, known as the "Public Inebriate Center." *Id.* at 10, ¶ 40 (internal quotation marks omitted). Although a non-profit organization, the Howard Center receives federal and state funding allegedly through a "Master Agreement" and annual "Final Grant Agreements" it has with the State of Vermont. *Id.* at 13, ¶ 55. In 2018, the Howard Center allegedly received more than five million dollars to provide "developmental disabilities, mental health and substance use disorder services." (Doc. 1 at 13, ¶ 56) (internal quotation marks omitted). The 2018 award funded a "Public Inebriate Program" and provided:

> The process of screening and determining appropriate placement for individuals meeting criteria for Incapacitation, due to either the intoxication or withdrawal from alcohol or other drugs, as defined in 18 V.S.A. Chapter 94. Results of the screening process may include individuals being referred for further medical assessment, alternative placements to incarceration, or placement within restrictive facilities.

*Id.* The State of Vermont Department of Health Grants Nos. 03420-08140 and DA 2018-003 required the Howard Center to comply with 18 V.S.A. Chapter 94's requirements. *Id.* at 13, ¶ 57.

Although the Complaint does not reference Vermont Rule CVR 13-100-003 or provide the text of the Health Grants, in his response and sur-reply to the Howard Center's motion to dismiss, Plaintiff argues that the Health Grants cite CVR 13-100-003 and asks the court to take judicial notice of this administrative rule. He contends that the Howard Center's argument that CVR 13-100-003 was repealed in 2018 is a "contested factual matter." (Doc. 49 at 4.) Pursuant to Fed. R. Evid. 201, the court takes judicial notice of CVR 13-100-003 because it is a regulation promulgated by an administrative

agency and thus a proper subject for judicial notice. *See Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (holding that "it was proper for the court to take judicial notice of [state prison] regulations"); *Rafiy v. Nassau*, 2017 WL 33597, at \*4 (E.D.N.Y. Jan. 4, 2017) ("[I]t is axiomatic that a court may take judicial notice of relevant law and administrative regulations, either at the request of a party or *sua sponte*, including on a motion to dismiss."). The court correspondingly takes judicial notice of the fact that CVR 13-100-003 was repealed on May 2, 2018 and therefore was not in effect when Plaintiff was injured. *See* Vt. Admin. Code 12-5-103:3.

At approximately 10:30 p.m., Defendants Recore and Gagne arrived at the Howard Center with Plaintiff, who remained in the police cruiser. No Howard Center staff saw Plaintiff, talked to him, or provided him with any "alcohol-incapacitated" ("incap") services. (Doc. 1 at 12, ¶ 52.) Plaintiff alleges that the Howard Center is "paid and licensed by the State of Vermont to provide services in these situations, in order to prevent just this type of harm." *Id.* ¶ 53. The Howard Center allegedly had an existing "care provider" relationship with Plaintiff and "knew or should have known that it had a duty to him as a vulnerable person." *Id.* at 12-13, ¶ 53. Plaintiff alleges on information and belief that numerous other individuals have allegedly also been refused "incap" services "without any proper effort or basis" after being brought to the Howard Center and have then "ended up being incarcerated and having 'accidental injuries.'" *Id.* at 13, ¶ 54.

The Howard Center's report of the incident indicates that Plaintiff was under the influence of alcohol but was discharged instead of being referred to treatment. Plaintiff alleges that the report falsely states "that there was an evidence-based determination of [Plaintiff's] 'incapacitation'" when in fact the Howard Center did not assess or evaluate him. *Id.* at 13-14, ¶ 58. He contends the Howard Center staff interacted with only one police officer, whose body camera was off. Video surveillance footage allegedly shows the Howard Center staff paid no attention to Plaintiff and refused him without inquiry.

According to Plaintiff, the Howard Center has stated that it did not admit Plaintiff to the Public Inebriate Center because he refused to have his blood drawn to determine

his blood alcohol content ("BAC"). Plaintiff asserts that he did not refuse to have his blood drawn and that the Howard Center staff asked him no questions.

## C. Plaintiff's Injuries at NSCF.

After leaving the Howard Center, Defendants Recore and Gagne took Plaintiff to NSCF, arriving at approximately 10:37 p.m. In the minutes before Plaintiff's arrival, Plaintiff contends that NSCF staff were preparing a "welcoming party" for which "reservations had been made." *Id.* at 15, ¶ 65. Plaintiff alleges that Defendants Recore and Gagne and "some or all of [Defendants] Mosher, Beyor, [Rowden], and Tuttle, as well as one or more [Doe] Defendant[]," were involved in video and audio "recorded communication[,]" (Doc. 1 at 16, ¶ 71), and that "[Defendants] Beyor, Rowden, and Tuttle all participated in planning and executing the events with [Defendant] Mosher[.]" *Id.* at 5, ¶ 6.

Defendant Rowden described the events after Plaintiff's arrival as follows:

After completing the Covid-19 screening we tried to help the Detox [Barrette] out of the Cruiser and he started pull away from CFSS Mosher. CFSS Mosher then removed the detox from the cruiser, and took him to a controlling surface (the Floor). At this time the Detox began to bleed from the nose and he appeared to have a large cut on his nose at that time. The Detox then began to comply and he was stood up against the wall. I then got some medical cloths to hold on the bridge of the detox nose to control the bleeding. Am care was then called and the detox was brought to the hospital by Am care and staff accompanied the detox to the hospital. During this incident COI Tuttle passed out as he was running the camera and he fell to the floor hitting his head on the cruiser. The nurse and I (CFSS Rowden) checked on COI Tuttle. After letting COI Tuttle regain himself I and the LNA helped him to his feet and out of the booking Garage to booking. There he was looked at by Nurse Cindy and she was not concerned about the small bump on his head. He was given some ice and had his vitals checked. He was sent home for the night as a precaution. His wife came and picked him up[,]as it was best he didn't drive. Superintendent Beyor Notified.

*Id.* at 15, ¶ 66 (alteration in original). Plaintiff alleges that Defendant Rowden's account is contradicted by video evidence. After his arrival at NSCF, an unknown VDOC-affiliated individual allegedly approached him and "suddenly and forcibly slam[med]" his

7

face and skull into the concrete floor, causing a "serious concussion[,]" cuts, bleeding, and other injuries, *id.* at 17, ¶ 76, as well as "severe trauma with lasting neurological, psychological, and emotional effects" and "economic consequences." *Id.* at 15, ¶ 63. "[B]ody camera footage taken after the assault and battery" allegedly "shows [Defendant] Mosher in positions that suggest that he was physically in charge when [Plaintiff] was forced" from the police cruiser to the floor." *Id.* at 4, ¶ 6.

Plaintiff alleges that VDOC Defendants have claimed that their alleged assault and battery of Plaintiff was in self-defense because he was moving toward them in a threatening manner ("getting closer . . . getting louder and had a history of fighting with the police") and they were concerned about the protection of staff. (Doc. 1 at 16, ¶ 69) (internal quotation marks omitted) (alteration in original). Plaintiff characterizes this story as a fabrication, although he concedes he was upset when he arrived after being forcibly removed from the police cruiser. Other VDOC "affiliates" allegedly falsely described Plaintiff as having tripped or having had a "slip and fall." *Id.* at 16, ¶ 67 (internal quotations marks omitted).

Although Plaintiff remembers the events leading up to his abuse at NSCF, he does not remember the events thereafter due to the injuries he sustained. His allegations are, in part, based on his memory of a onetime viewing of a VDOC video that depicts him in the sally-port. VDOC did not allow him to copy or keep the video.

According to Plaintiff, either Defendant Recore or Gagne claimed to have turned his body camera off and thus there is no body camera footage during "all of the key events" after Plaintiff's initial arrest, allegedly in violation of SVPD policy. *Id.* at 17, ¶ 73. The "other [SVPD] police agent" turned his body camera off after arriving at NSCF, then turned the camera back on "just after the 'accident,' when there was blood all over." *Id.* ¶ 74. Plaintiff includes four still photos from the officers' body cameras in his Complaint, depicting Plaintiff being held by two correctional officers next to a wall that appears to have blood on it.

Defendant Stell allegedly claimed there are no text messages relating to Plaintiff's injuries; however, Plaintiff contends: "There is good reason to believe that there were

extensive text messages about the events in question, and that they disappeared in the days after the event, when the official-record reports were changed several times to try to conform with observable data to which other people had access to." *Id.* at 22, ¶ 78.

## D. Plaintiff Receives Care at the Hospital.

After Plaintiff was injured, an ambulance took him to a hospital, where he received medical attention. The hospital then released him and he went home with his mother. Plaintiff's mother allegedly stated:

> I picked him up at the hospital and could hardly recognize him due to the trauma that was done to his face. I brought him home and stayed by his side for 14 days. I lost hours and pay at work cause he couldn't be left alone for the first nights. I was awake all night because he kept choking on his own blood due to the nose injury. He was off balance for a good week. His thought process and ability to comprehend was off. He woke up several times at night with night terrors. To the point where I had to lay across him to keep him under control. I couldn't look at my son without crying. I just couldn't believe anybody could do this to a person let alone a person who just had surgery and could hardly walk. Still today the headaches and blurry vision is an issue. But for me the worst was having to lie to his daughter because you don't want kids to be afraid of police.

*Id.* ¶ 80. Plaintiff alleges that law enforcement's release of him to his mother proves that their assertions that he was a hazard to himself or others due to his alcohol use were false. In his Complaint, he includes three photos of his facial injuries taken after his release from the hospital.

## E. Swanton Village Police Department's and VDOC's Policies, Customs, and Practices.

Plaintiff alleges that SVPD and VDOC have "policies, customs, and practices of unlawful seizure and use of excessive force." (Doc. 1 at 27, ¶ 83.) He cites the State of Vermont Agency of Human Services Department of Corrections Use of Force Policy #413-A, which he claims was in force at the time of his injuries:[1]

> The [V]DOC believes in a non-violent conflict resolution process. As such, conflicts shall be resolved at the lowest level of intervention compatible with the safety of staff, the public, offenders, and the need to maintain order. Physical force shall only be used when alternatives to physical force

---

[1] The parties do not agree whether this policy was rescinded.

have proven inadequate or the emergent situation does not provide the time
or opportunity to attempt a non-violent conflict resolution process.

*Id.* ¶ 85. He also cites the VDOC's Incapacitated Person Policy #306.01, which allegedly
states that the policy is to provide the incapacitated persons with "oversight . . . with their
health and safety in mind." *Id.* ¶ 86 (omission in original). Plaintiff asserts that the
actions of VDOC Defendants during his detention contradicted VDOC's published
policies and constituted willful misconduct.

Plaintiff contends "arranged accident[s]" similar to the one he experienced are
common at NSCF, with one correctional worker estimating that it had occurred
approximately twenty times. *Id.* at 16, ¶ 68 (internal quotation marks omitted). Other
Vermont prisons have allegedly installed padding to prevent injuries from unprotected
bodies hitting concrete prison floors.

VDOC allegedly had notice that its policies, practices, customs, training, and
supervision led to unconstitutional police conduct but continued to provide inadequate
training to correctional officers regarding compliance with the Fourth Amendment's
prohibition on unlawful seizures and the excessive use of force. Plaintiff asserts proper
training would have prevented the constitutional violations that allegedly gave rise to his
injuries.

The Vermont State Police investigated Plaintiff's battery allegations, and the
Franklin County State's Attorney reviewed the investigation. No criminal charges were
filed.

Plaintiff seeks compensatory damages, punitive damages; attorney's fees and
costs; declaratory, injunctive, or other equitable relief; and any other relief the court
deems proper, including additional and available fees and costs and prejudgment interest.

## II.   Conclusions of Law and Analysis.

### A.   Standard of Review.

"[A] district court may properly dismiss a case for lack of subject matter
jurisdiction under Rule 12(b)(1) if it 'lacks the statutory or constitutional power to
adjudicate it.'" *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir.

2005) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (internal quotation marks and citation omitted).

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a plaintiff's complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

## B.   Whether VDOC Defendants Are Entitled to Sovereign Immunity.

VDOC Defendants assert that sovereign immunity bars Plaintiff's state constitutional and § 1983 claims against them and asks the court to dismiss them from this lawsuit for lack of subject matter jurisdiction. "While Eleventh Amendment immunity is jurisdictional, it is not coextensive with the limitations on judicial power in Article III, and therefore whether it is properly raised under Fed. R. Civ. P. 12(b)(1) or 12(b)(6) is an unsettled question of law." *Allco Fin. Ltd. v. Roisman*, 2022 WL 2528328, at *5 (D. Vt. July 7, 2022) (alterations adopted) (internal quotation marks and citations omitted). "In accordance with the approach taken by other district courts within [the Second] Circuit, the court [applies] the stricter standard under Rule 12(b)(6) in assessing Defendants' Eleventh Amendment immunity arguments." *Id.* (alterations adopted) (internal quotation marks and citations omitted).

Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment "bars a damages action against a State in federal court" unless a state has expressly and unequivocally waived its immunity or Congress has abrogated the state's immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (explaining the "state acquiescence" and "congressional abrogation" exceptions).

"The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The party "invoking the Eleventh Amendment bears the burden of demonstrating that it

12

qualifies as an arm of the state entitled to share in its immunity." *Woods*, 466 F.3d at 237.

Plaintiff cites *Zullo v. State*, 2019 VT 1, 209 Vt. 298, 205 A.3d 466, to support his assertion that the Vermont Tort Claims Act ("VTCA") waives Vermont's sovereign immunity for state constitutional claims brought in federal court. However, *Zullo* held only that common law sovereign immunity does not bar constitutional tort actions brought under the VTCA against the State of Vermont in Vermont *state* courts. 2019 VT 1, ¶ 28 ("[T]he common law doctrine of sovereign immunity is not an absolute jurisdictional bar to *Vermont courts* considering constitutional tort actions.") (emphasis supplied). It did not hold that Vermont has explicitly and unequivocally waived its Eleventh Amendment sovereign immunity for suits brought under state constitutional law in federal court. To the contrary, the VTCA provides: "Nothing in this chapter waives the rights of the State under the Eleventh Amendment of the U.S. Constitution." 12 V.S.A. § 5601(g). As a result, the law "does not waive Vermont's sovereign immunity such that plaintiffs may sue state employees for negligence [or wrongful acts or omissions] in federal court[,]" *Breer v. Gold*, 2009 WL 249648, at *7 (D. Vt. Feb. 3, 2009), except in the case of "gross negligence or willful misconduct." 12 V.S.A. § 5602(b).

Eleventh Amendment immunity "has no bearing on whether a plaintiff may sue the state for the same relief in the state's own courts." *Beaulieu v. Vermont*, 807 F.3d 478, 485 (2d Cir. 2015). "Even when a state may be sued in its own courts for a money judgment, the Eleventh Amendment protects it from a liability imposed by a federal court." *Id.*

In this action, which Plaintiff brought in federal court, the State of Vermont has not waived its sovereign immunity by consenting to the lawsuit. VDOC is a state agency protected from suit by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which *the State or one of its agencies* or departments is named as the defendant is proscribed by the Eleventh Amendment.") (emphasis supplied). Sovereign immunity therefore bars Plaintiff's state constitutional claim against VDOC and his § 1983 claims against Defendants Rowden, Tuttle, and Beyor in their official capacities in this court.

*See Graham*, 473 U.S. at 166 (explaining distinction between personal- and official-capacity suits and noting, "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

For the reasons stated above, VDOC Defendants' motion to dismiss all claims against VDOC and to dismiss Plaintiff's § 1983 claims against Defendants Rowden, Tuttle, and Beyor in their official capacities is GRANTED.

## C. Whether Plaintiff's 42 U.S.C. § 1983 Claims Against Defendants Mosher, Rowden, Tuttle, and Beyor Must Be Dismissed.

Plaintiff asserts claims for unlawful detention or seizure, unlawful imprisonment, and excessive force against Defendants Mosher, Rowden, Tuttle, and Beyor pursuant to 42 U.S.C. § 1983. Section 1983 is "not itself a source of substantive rights[,]" but rather a vehicle "for vindicating federal rights elsewhere conferred[.]" *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)) (internal quotation marks omitted). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) (internal quotation marks omitted). Plaintiff grounds his alleged constitutional violations in the Fourth Amendment's prohibition against unreasonable seizures.

Defendant Mosher moves to dismiss only Plaintiff's § 1983 claims for unlawful seizure and unlawful imprisonment. Defendants Rowden, Tuttle, and Beyor separately move to dismiss Plaintiff's § 1983 claims against them for unlawful seizure, unlawful imprisonment, and excessive force, as well as his state law claims for assault and battery and intentional infliction of emotional distress ("IIED").

### 1. Whether Plaintiff Plausibly Alleges a § 1983 Claim for Unlawful Seizure Against Defendant Mosher.

Defendant Mosher argues that he did not participate in Plaintiff's arrest and that, under Vermont law, he could not refuse to admit Plaintiff to NSCF because he is not

14

authorized to conduct his own probable cause assessment before detaining Plaintiff. He claims he is entitled to immunity under 24 V.S.A. § 4810(j).

To plead an unreasonable seizure in violation of the Fourth Amendment, a plaintiff must plausibly allege that a "government actor[] ha[s], 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen[.]'" *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 19, n.16 (1968)) (omission in original). The Fourth Amendment's protections against unreasonable seizures apply when an officer takes an individual into custody, "whether the seizure is for purposes of law enforcement or due to an individual's mental illness" or intoxication. *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016); *see also Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993) (finding that the plaintiff's involuntary admission to a hospital was an "infringement of his liberty . . . tantamount to the infringement of being arrested"); *Leno v. Stupik*, 2008 WL 5412849, at *3 (D. Vt. Dec. 29, 2008) (holding officer's actions in taking plaintiff to hospital and correctional facility against his will and "involuntarily confin[ing him] there pursuant to state law" was an infringement of liberty subject to Fourth Amendment). *Cf. Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 67 (1992) ("[T]he [Fourth] Amendment's protection applies in the civil context as well.").

"To handcuff and detain, even briefly, a person for mental-health reasons, an officer must have 'probable cause to believe that the person presented a risk of harm to [him]self or others.'" *Myers*, 819 F.3d at 632 (quoting *Kerman v. City of New York*, 261 F.3d 229, 237 (2d Cir. 2001)). Because the state has an interest in "protecting the public from the intoxicated and the intoxicated from themselves" analogous to its interest in "protecting the public from the mentally ill and the mentally ill from themselves," the same standard applies in the context of seizures for intoxication due to alcohol. *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 591 (10th Cir. 1999) ("[T]o justify seizure for intoxication by alcohol, an officer must have probable cause to believe an intoxicated person is a danger to himself or others."); *see also Powell v. State of Tex.*, 392 U.S. 514, 554 n.5 (1968) (recognizing "the power of the State to remove a helplessly

15

intoxicated person from a public street, although against his will, and to hold him until he
has regained his powers").

Under 18 V.S.A. § 4810(b), "[w]hen a law enforcement officer encounters a
person who, in the judgment of the officer, is incapacitated as defined in section 4802 of
this title, the person shall be taken into protective custody by the officer." An individual
is "incapacitated" under § 4802 when:

> a person, as a result of his or her use of alcohol or other drugs, is in a state
> of intoxication or of mental confusion resulting from withdrawal such that
> the person:
>
> > (A) appears to need medical care or supervision by approved
> > substance abuse treatment personnel, as defined in this section, to
> > assure his or her safety; or
> >
> > (B) appears to present a direct active or passive threat to the safety of
> > others.

18 V.S.A. § 4802.

In this case, Defendants Recore and Gagne made the initial decision to take
Plaintiff into protective custody, thereby seizing him for Fourth Amendment purposes.
Whether the seizure was unlawful turns on whether it was supported by probable cause.
*See Virginia v. Moore*, 553 U.S. 164, 177 (2008) ("[W]e have equated a lawful arrest
with an arrest based on probable cause[.]"). Plaintiff alleges that when Defendants Recore
and Gagne took him into custody, he was able to walk and talk, was not armed or
"belligerent[,]" and was "calmly and responsibly awaiting his ride." (Doc. 1 at 8, ¶¶ 30-
31.) At the pleading stage, accepting these allegations as true, Plaintiff has plausibly
alleged that his seizure by Defendants Recore and Gagne was not supported by probable
cause.

When Plaintiff arrived at NSCF and interacted with Defendant Mosher, Plaintiff
alleges that Defendant Mosher unlawfully seized him for a second time by bodily
removing him from the police vehicle, "slamm[ing] him to the floor," and detaining him
"without having made [Defendant Mosher's] own independent determination or
questioning the basis under which [Plaintiff] was brought to the [facility.]" (Doc. 40 at 6,
14.) Taking these allegations as true, Plaintiff plausibly alleges that Defendant Mosher,

16

acting under state law, used physical force to restrain Plaintiff's liberty. Defendant
Mosher counters that he could not have unlawfully seized Plaintiff because he lacked the
authority to challenge a probable cause determination.

> Under 18 V.S.A. § 4810:
>
> (d) A person judged by a law enforcement officer to be incapacitated and
> who has not been charged with a crime may be lodged in protective custody
> in a lockup or community correctional center for up to 24 hours or until
> judged by the person in charge of the facility to be no longer incapacitated,
> if and only if:
>
>> (1) the person refuses to be transported to an appropriate
>> facility for treatment or, if once there, refuses treatment or
>> leaves the facility before he or she is considered by the
>> responsible staff of that facility to be no longer incapacitated;
>> or
>>
>> (2) no approved substance abuse treatment program with
>> detoxification capabilities and no staff physician or other
>> medical professional at the nearest licensed general hospital
>> can be found who will accept the person for treatment.
>
> (e) No person shall be lodged in a lockup or community correctional center
> under subsection (d) of this section without first being evaluated and found
> to be indeed incapacitated by a substance abuse crisis team, a designated
> substance abuse counselor, a clinical staff person of an approved substance
> abuse treatment program with detoxification capabilities, or a professional
> medical staff person at a licensed general hospital emergency room.

18 V.S.A. § 4810(d)-(e). "No lockup or community correctional center shall refuse to
admit an incapacitated person in protective custody whose admission is requested by a
law enforcement officer, in compliance with the conditions of this section." *Id.* § 4810(f).

The parties cite no authority, and this court has found none, regarding whether
Vermont courts have interpreted § 4810(f)'s phrase "in compliance with the conditions of
this section" to mean that correctional officers have a duty to verify law enforcement's
compliance with § 4810 before detaining an incapacitated person. The court cannot read
that requirement into the statute. *See Geraw v. Geraw*, 2021 VT 45, ¶ 23, 215 Vt. 80, 88,
257 A.3d 847, 853 ("[W]e will not 'read into a statute something which is not there
unless it is necessary in order to make the statute effective[.]'") (quoting *State v. O'Neill*,

17

682 A.2d 943, 946 (Vt. 1996)). The statute's unequivocal directive that "[n]o lockup or community correctional center shall refuse to admit an incapacitated person in protective custody whose admission is requested by a law enforcement officer" vests no discretion in Defendant Mosher to refuse to accept Plaintiff at NSCF. 18 V.S.A. § 4810(f). Defendant Mosher is thus correct that he had no duty to ensure a law enforcement officer's detention of an individual under § 4810 was supported by probable cause.

A prison official who complies with a facially valid court order has immunity from § 1983 claims.[2] Correspondingly, 18 V.S.A. § 4810(j) states that "persons responsible for supervision in a lockup or community correctional center . . . are acting in the course of their official duty and are not criminally or civilly liable therefor, unless for gross negligence or willful or wanton injury." Under § 4810(j), Defendant Mosher thus cannot be liable unless he acted with gross negligence or willfully or wantonly caused Plaintiff injury.

Plaintiff alleges that video footage shows Defendant Mosher was "physically in charge when [Plaintiff] was forced from being shackled in a police car for 45 minutes to bleeding on the floor." (Doc. 1 at 4-5, ¶ 6.) Defendant Mosher allegedly "plann[ed] and execut[ed]" Plaintiff's beating, *id.* at 5, ¶ 6, and "took [Plaintiff] to a controlling surface (the Floor)" after removing him from the police cruiser, while Plaintiff was handcuffed and wearing a medical walking boot. *Id.* at 15, ¶ 66. At the pleading stage, these allegations are sufficient to allege that Defendant Mosher willfully and wantonly harmed Plaintiff and was not acting "in a good-faith effort to maintain or restore discipline[.]" *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (explaining that whether the force used "inflicted unnecessary and wanton pain and suffering ultimately turns on whether force

---

[2] *See, e.g.*, *Salem v. City of New York*, 811 F. App'x 678, 682 (2d Cir. 2020) (observing that a plaintiff "cannot plausibly allege that he was unconstitutionally seized in violation of the Fourth Amendment when he was detained in accordance with his bail conditions"); *Ravenscroft v. Casey*, 139 F.2d 776, 778 (2d Cir. 1944) (holding that whether a county judge's "orders were correct or erroneous he had jurisdiction to make them and they provide immunity to the jail authorities who did nothing other than perform them"); *Engebretson v. Mahoney*, 724 F.3d 1034, 1039 (9th Cir. 2013) ("[P]rison officials charged with executing facially valid court orders enjoy absolute immunity from § 1983 liability for conduct prescribed by those orders.").

was applied in a good faith effort to maintain or restore discipline or maliciously and
sadistically for the very purpose of causing harm") (internal quotation marks omitted);
*see also State v. Parenteau*, 569 A.2d 477, 479 (Vt. 1989) ("We have previously held . . .
that the word 'willful' denotes intention and that that means by design.") (internal
quotation marks omitted); 18 V.S.A. § 4810(j) (providing that correctional officers "who
act under authority of this section are acting in the course of their official duty and are not
criminally or civilly liable therefor, unless for gross negligence or willful or wanton
injury").

Because Plaintiff plausibly alleges that Defendant Mosher willfully and wantonly
injured him, Defendant Mosher is not at this juncture protected by § 4810(j)'s exemption
from liability. The court therefore DENIES Defendant Mosher's motion to dismiss
Plaintiff's Fourth and Fourteenth Amendment claim for unlawful seizure under § 1983.

### 2. Whether Plaintiff Plausibly Alleges a § 1983 Claim for Unlawful Imprisonment Against Defendant Mosher.

"A false imprisonment claim under § 1983 tracks the state-law elements of the
claim." *Grega v. Pettengill*, 123 F. Supp. 3d 517, 548 (D. Vt. 2015) (citing *Russo v. City
of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007)); *Russo*, 479 F.3d at 204 ("[W]e look
to . . . state law principles to determine the validity of [the plaintiff's] federal civil rights
claim based on false imprisonment."). Under Vermont law,

> a person commits the crime of false imprisonment, or unlawful restraint in
> the second degree, "if the person . . . knowingly restrains another person."
> 13 V.S.A. § 2406; *see also State v. Alexander*, 173 Vt. 376, 795 A.2d 1248,
> 1253 (2002) (describing unlawful restraint in the second degree as the
> "Vermont equivalent" of false imprisonment). "Probable cause is a
> complete defense to a constitutional claim of false arrest and false
> imprisonment" under both Vermont and federal law. *Betts*, 751 F.3d at 82;
> *Crowell v. Kirkpatrick*, 667 F. Supp. 2d 391, 417 (D. Vt. 2009).

*Grega*, 123 F. Supp. 3d at 548 (omission in original).

Plaintiff's claim for false imprisonment against Defendant Mosher[3] incorporates

---

[3] Plaintiff asserts this claim against Defendants Recore, Gagne, Mosher, Rowden, Tuttle, Beyor,
and the VDOC-affiliated Doe Defendants. Because only Defendants Mosher, Rowden, Tuttle,
and Beyor moved to dismiss the claim, the court does not address the claims against the

the Complaint's prior allegations and states generally: "As a result of the unlawful conduct described herein, [Plaintiff] was detained against his will[.]" (Doc. 1 at 31, ¶ 121.)

Plaintiff "fail[s] to set forth any additional allegations which would suggest that [his] claim for false imprisonment is separate from, or an alternative to, [his] claim for wrongful . . . seizure." *Armstrong v. Sexson*, 2007 WL 2288297, at *3 (E.D. Cal. Aug. 8, 2007). His claim for false imprisonment in violation of the Fourth Amendment is thus duplicative of his unlawful seizure claim and must be dismissed. *See Asten v. City of Boulder*, 652 F. Supp. 2d 1188, 1197 (D. Colo. 2009) (dismissing plaintiff's false imprisonment claim as duplicative of her claim of unlawful seizure); *Brigman v. Schaum*, 2021 WL 3821070, at *6 n.3 (M.D. Pa. July 27, 2021), *report & recommendation adopted*, 2021 WL 3862023 (M.D. Pa. Aug. 26, 2021) ("[T]o the extent [p]laintiff is asserting an 'unlawful seizure' claim related to the seizure of his person, this claim is construed as false arrest/false imprisonment and is duplicative of his false arrest/false imprisonment claims."). The court thus GRANTS Defendant Mosher's motion to dismiss Plaintiff's Count III against him on the grounds that it is duplicative.

> **3.     Whether Plaintiff Plausibly Alleges § 1983 Claims for Unlawful Seizure, Unlawful Imprisonment, or Excessive Use of Force Against Defendants Rowden, Tuttle, and Beyor.**

Defendants Rowden, Tuttle, and Beyor argue that Plaintiff's § 1983 claims against them must be dismissed because Plaintiff fails to allege that they were personally involved in the alleged constitutional violations. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Iqbal*, 556 U.S. at 676 (observing that "vicarious liability is inapplicable to *Bivens [v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)] and § 1983 suits").

Personal involvement may mean "direct participation[,]" such as "personal

---

remaining Defendants.

participation by one who has knowledge of the facts that rendered the conduct illegal[,]"
or "indirect" participation, "such as ordering or helping others to do the unlawful acts[.]"
*Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks
omitted). The Second Circuit recently clarified that "after *Iqbal*, there is no special rule
for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).
Instead, "[t]he [alleged constitutional] violation must be established against the
supervisory official directly" and "a plaintiff must plead that each Government-official
defendant, through the official's own individual actions, has violated the Constitution."
*Id.* at 616 (quoting *Iqbal*, 556 U.S. at 676) (internal quotation marks omitted). In other
words, a "plaintiff cannot press both direct and supervisory claims against a single
defendant, with both claims premised on the same conduct." *Martinez v. City of New
York*, 564 F. Supp. 3d 88, 105 (E.D.N.Y. 2021) (internal quotation marks omitted).

> Plaintiff alleges:
>
> [his] investigation, and the investigation by the Vermont State Police of his
> assault and battery, suggest that [Defendants] Beyor, Rowden, and Tuttle
> all participated in planning and executing the events with Mosher,
> including the prior planning of the assault and battery. But [Plaintiff] is not
> sure – the State has the evidence and has shown it once but also withheld
> further access.

(Doc. 1 at 5, ¶ 6.) He alleges that a "recorded communication" includes "a coordination
of activities by [Defendants] Recore, Gagne, and some or all of Mosher, Beyor,
[Rowden], and Tuttle, as well as one or more [V]DOC-affiliated Defendants Doe, under
cover of doing a lawful job, but knowingly preparing for misconduct at the prison." *Id.* at
16, ¶ 71. He quotes Defendant Rowden's account of the events at NSCF as stating that he
applied "medical cloths" to Plaintiff's nose to stop it from bleeding after Defendant
Mosher took Plaintiff "to a controlling surface (the Floor)." *Id.* at 15, ¶ 66. Plaintiff
alleges that Defendant Rowden's account of the events is not credible because it is
"contradicted by the video evidence" and the accounts of other, unnamed individuals who
described the incident as a "trip" or "slip and fall." *Id.* at 16, ¶ 67 (internal quotation
marks omitted).

Accepting Plaintiff's allegations as true, Defendants Tuttle and Rowden were present during part or all of the alleged assault of Plaintiff at NSCF. The still photos from body camera footage show the presence of at least three unidentified corrections officers, who may or may not include these Defendants.

In contrast, Plaintiff now appears to concede that Defendant Beyor was not present and was notified at some point during or after the incident. *See* Doc. 36 at 3 ("While [Plaintiff] has little memory of the events that took pace, his investigation has revealed that [Defendants] Rowden and Tuttle both participated in planning and execution of the 'accident,' reflected in video evidence, details of which were then relayed to [Defendant] Beyor."); *id.* at 8 ("Here, [Plaintiff] has included specific allegations that [Defendant] Beyor was informed of the incident, yet did nothing. Compl. ¶¶ 66, 71, 156."). This is not sufficient to allege personal involvement. "[A] prison official cannot be held personally liable under § 1983 on the basis of *respondeat superior* or simply because he or she sits atop the prison hierarchy." *Byrne v. Trudell*, 2013 WL 2237820, at *9 (D. Vt. May 21, 2013).

Because "[a] police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force," Defendants Tuttle and Rowden's presence during Defendant Mosher's alleged use of force may be sufficient to plausibly allege that they were "tacit collaborator[s] in the illegality" and thus to state a claim for failure to intervene. *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (internal quotation marks omitted). Plaintiff does not, however, assert a failure to intervene claim against these Defendants. Rather, he asserts an excessive force claim, which requires him to plausibly allege that Defendants Tuttle and Rowden personally used force against him that was objectively unreasonable under the Fourth Amendment. *See Graham*, 490 U.S. at 397 ("As in other Fourth Amendment contexts, . . . the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").

Plaintiff's allegations do not give rise to a plausible inference that Defendants

22

Rowden, Tuttle, or Beyor used excessive force against him. Without more, they remain "naked assertions devoid of further factual enhancement" that cannot survive a Rule 12(b)(6) motion to dismiss. *See Iqbal*, 556 U.S. at 678 (alteration adopted and internal quotation marks omitted) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). Although discovery may yield additional information regarding the alleged roles of each participant, that information is not contained in the pending Complaint.

Because Plaintiff does not plausibly allege Defendants Beyor, Tuttle, and Rowden's "personal involvement in the alleged constitutional deprivation[,]"[4] *Grullon*, 720 F.3d at 138, through their use of excessive force, their motion to dismiss Plaintiff's § 1983 claims against them in their individual capacities is GRANTED.

## D.   Whether Plaintiff Plausibly Alleges a Claim for Assault and Battery Against Defendants Rowden, Tuttle, and Beyor.

Under Vermont law, assault is "any gesture or threat of violence exhibiting an intention to assault, with the means of carrying that threat into effect . . . unless immediate contact is impossible." *Bishop v. Ranney*, 7 A. 820, 820-21 (Vt. 1887) (internal quotation marks omitted). "If the party threatening the assault has the ability, means, and apparent intention, to carry his threat into execution, it may in law constitute an assault." *Wilson v. Smith*, 477 A.2d 964, 965 (Vt. 1984) (alteration and internal quotation marks omitted) (quoting *Clark v. Downing*, 55 Vt. 259, 262 (1882)). Battery is "an intentional act that results in harmful contact with another." *Christman v. Davis*, 889 A.2d 746, 749 (Vt. 2005).

---

[4] Plaintiff's statement that "personal involvement is a question of fact which cannot be determined at the pleading stage" is incorrect. (Doc. 36 at 6.) Plaintiff has the burden of "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the context of § 1983 claims, this burden includes plausibly alleging that the individual defendants were personally involved in the alleged constitutional violations. *See Grullon v. City v. New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("We conclude that the district court did not err in dismissing [the plaintiff]'s claims against the Warden in his individual capacity for lack of sufficient allegations of the Warden's personal involvement.").

VDOC Defendants argue that Plaintiff fails to plausibly allege assault and battery because his Complaint merely recites the elements of both offenses without alleging that Defendants Rowden, Tuttle, or Beyor caused his injuries. Plaintiff's claim incorporates his previous incorporations by reference and alleges that the "aforementioned actions of Recore and Gagne and the [V]DOC Defendants, including Rowden, Mosher[5], Tuttle, and Beyor, constitute[d] an intentional assault and battery upon [Plaintiff's] person"; that he "was confronted with 'imminent danger of physical contact'; and that he was "also physically assaulted and battered with intent." (Doc. 1 at 35, ¶¶ 137-39.) While Plaintiff alleges that Defendant Mosher used gratuitous force against him, his allegations regarding the personal involvement of Defendants Rowden, Tuttle, and Beyor in the alleged use of force are vague and speculative. Additional facts regarding individual acts or omissions by Defendants Rowden, Tuttle, and Beyor that constituted an assault and battery that caused Plaintiff's injuries are required before those claims may proceed.

For the reasons stated above, the court GRANTS Defendants Rowden, Tuttle, and Beyor's motion to dismiss Plaintiff's assault and battery claim (Count V) against them.

## E.     Whether Plaintiff Plausibly Alleges a Claim of Intentional Infliction of Emotional Distress Against Defendants Rowden, Tuttle, and Beyor.

To state an IIED claim under Vermont law, a plaintiff "must show defendants engaged in outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Fromson v. State*, 2004 VT 29, ¶ 14, 176 Vt. 395, 399, 848 A.2d 344, 347 (2004) (internal quotation marks omitted). "Plaintiff's burden on this claim is a 'heavy one' as he must show defendants' conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable." *Id.* (internal quotation marks omitted).

---

[5] Defendant Mosher does not move to dismiss this claim.

The individual VDOC Defendants assert that Plaintiff's Complaint is silent regarding any actions they took that caused Plaintiff's alleged IIED. Plaintiff points to his allegation that the "[V]DOC Affiliates' activities" caused him serious injuries, including a concussion and severe emotional distress. (Doc. 36 at 13.)

Plaintiff further alleges:

The conduct of Recore and Gagne and the [V]DOC Defendants, including Rowden, Mosher, Tuttle, and Beyor towards [Plaintiff] was extreme and outrageous. Recore and Gagne and the [V]DOC Defendants, including Rowden, Mosher, Tuttle, and Beyor, and probably Defendants Doe, intentionally caused [Plaintiff] emotional distress by: (i) committing an assault and battery; (ii) using excessive force against [Plaintiff]; and (iii) detaining [Plaintiff] without probable cause, among other actions.

(Doc. 1 at 37, ¶ 154.) He contends that the reasonableness of the individual VDOC Defendants' actions is a question of fact that is not appropriate for determination at the pleading stage.

A law enforcement officer's gratuitous use of force may be extreme and outrageous if it "took place at a time when the officer[] either knew or reasonably should have known that [p]laintiff was incapacitated." *Burwell v. Peyton*, 131 F. Supp. 3d 268, 300 (D. Vt. 2015) (declining to find that defendant officers' conduct "did not 'reach the level of extreme outrage necessary'" as a matter of law). An officer who witnesses another officer's use of excessive force and who does nothing to intervene may also be liable. *See Figueroa*, 825 F.3d at 106 (holding that an officer "may be held liable for his failure to [intervene] if he observes the use of force and has sufficient time to act to prevent it").

Plaintiff alleges that some or all of the individual VDOC Defendants "coordinated" with Defendants Mosher, Recore, and Gagne to prepare an "accident" for him upon his arrival at NSCF. He plausibly alleges that he was subjected to a gratuitous use of force by Defendant Mosher. An allegation that a defendant has participated in the alleged gratuitous beating of an individual who was handcuffed and in protective custody may be conduct rising to the level of outrageousness necessary to support an IIED claim. However, because Plaintiff's allegations regarding the roles of Defendants Rowden,

25

Tuttle, and Beyor remain vague and speculative, at this point he has not satisfied his burden to plausibly allege an IIED claim against them. The court therefore GRANTS the individual VDOC Defendants' motion to dismiss Plaintiff's claim for IIED (Count VII) against them.

### F.   Whether Plaintiff Plausibly Alleges a Claim for Negligence Against the Howard Center.

The Howard Center argues that Plaintiff fails to plausibly allege negligence because (1) it did not owe Plaintiff a duty; (2) even if the Howard Center owed Plaintiff a duty, it could not have reasonably foreseen that he would be assaulted by law enforcement or correctional officers later that night; (3) the Howard Center could not have controlled those third parties' actions; (4) the Howard Center was unaware that a need to prevent harm by third parties existed; and (5) the Complaint relies on impermissibly conclusory allegations, which the court may not credit under *Iqbal* and *Twombly*.

Under Vermont law, "[c]ommon law negligence has four elements: a legal duty owed by defendant to plaintiff, a breach of that duty, actual injury to the plaintiff, and a causal link between the breach and the injury." *Demag v. Better Power Equip., Inc.*, 2014 VT 78, ¶ 6, 197 Vt. 176, 179, 102 A.3d 1101, 1105 (internal quotation marks omitted). "The existence of a duty is primarily a question of law." *Id.* (internal quotation marks omitted). "In determining whether a duty exists, [Vermont courts] consider a variety of public policy considerations and relevant factors. It is a question of fairness that depends on, among other factors, the relationship of the parties, the nature of the risk, the public interest at stake, and the foreseeability of the harm." *Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71A, ¶ 26, 212 Vt. 612, 238 A.3d 608, 620 (internal quotation marks omitted). Where the Vermont Supreme Court has not given its "imprimatur that a legal duty exists[,]" courts "should not recognize a new cause of action or enlarge an existing one without first determining whether there is a compelling public policy reason for the change." *Langle v. Kurkul*, 510 A.2d 1301, 1305-06 (Vt. 1986).

Plaintiff argues that the Howard Center owed him a duty at the time of his injuries

because it was a "paid and licensed mental health provider" that had a contractual relationship with the State of Vermont to provide incapacitated inebriate services under two Department of Health Grants from 2018. (Doc. 35 at 5.) He alleges that the Health Grants imposed a statutory duty on the Howard Center requiring it to comply with 18 V.S.A. Chapter 94 in administering its Public Inebriate Center.

Although certain exceptions exist, "[t]here is generally no duty to protect another from the actions of a third person." *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 15, 209 Vt. 514, 521, 208 A.3d 609, 614; *see also* Restatement (Second) of Torts § 315 ("There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless . . . a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or . . . gives to the other a right to protection."). "One exception to this general rule is that in some cases courts may recognize a private right of action for damages based on violation of a statutory duty." *Stocker v. State*, 2021 VT 71, ¶ 15, 215 Vt. 432, 442, 264 A.3d 435, 443. Where a duty of care arises from a statute, "the existence and scope of [that] duty of care . . . turns on the specific terms of the statute at issue." *Id.*, 2021 VT 71, ¶ 20, 215 Vt. at 446, 264 A.3d at 445 (finding that a plaintiff's negligence claim against a state agency was "limited to violations of mandatory duties" prescribed by statute because the statute's other provisions were highly discretionary and expressly barred private rights of action).

18 V.S.A. § 4810 requires law enforcement to follow certain procedures when a substance abuse treatment program is at capacity or otherwise refuses to accept an individual in protective custody.[6] There is no corresponding statute imposing this duty on

---

[6] *See* 18 V.S.A. § 4810(b) (providing officer "shall" take a person he or she judges to be incapacitated into protective custody, then "shall transport" that person to "an approved substance abuse treatment program with detoxification capabilities or to the emergency room of a licensed general hospital for treatment"); *id.* § 4810(c) ("If an incapacitated person is taken to an approved substance abuse treatment program with detoxification capabilities and the program is at capacity, the person shall be taken to the nearest licensed general hospital emergency room for treatment."); *id.* § 4810(d) (allowing an incapacitated individual to be "lodged in protective custody in a lockup or community correctional center" only if he or she refuses treatment or "no

2:22-cv-00129-cr    Document 65    Filed 06/06/23    Page 28 of 35

the Howard Center. Plaintiff therefore fails to plausibly allege that the Howard Center owed him a statutory duty of care under 18 V.S.A. Chapter 94.

A duty of care may, however, arise out of a contractual obligation. *See Langlois v. Town of Proctor*, 2014 VT 130, ¶ 13, 198 Vt. 137, 145, 113 A.3d 44, 49 (noting that "many of our duty cases are based on undertakings involving contractually assumed duties"). The Vermont Supreme Court has adopted § 324A of the Restatement (Second) of Torts, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> > (a) his failure to exercise reasonable care increases the risk of such harm, or
> >
> > (b) he has undertaken to perform a duty owed by the other to the third person, or
> >
> > (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965); *see also Perry v. Green Mountain Mall*, 2004 VT 69, ¶ 10, 177 Vt. 109, 113, 857 A.2d 793, 797 (holding that plaintiff who was injured when her car skidded on ice in a mall parking lot alleged a duty under § 324A owed by defendant who had a contract with the mall owner to maintain the mall's parking lots and roads); *Derosia v. Liberty Mut. Ins. Co.*, 583 A.2d 881, 883-84 (Vt. 1990) (finding insurer who provided safety investigations for insured owed a duty under § 324A to plaintiff employee who was injured at insured's workplace).

Plaintiff alleges that the Howard Center received federal and state funding to operate its Public Inebriate Center and that the grant agreement stated that the program would include:

> The process of screening and determining appropriate placement for

approved substance abuse treatment program with detoxification capabilities and no staff physician or other medical professional at the nearest licensed general hospital can be found who will accept the person for treatment").

28

> individuals meeting criteria for Incapacitation, due to either the intoxication
> or withdrawal from alcohol or other drugs, as defined in 18 V.S.A. Chapter
> 94. Results of the screening process may include individuals being referred
> for further medical assessment, alternative placements to incarceration, or
> placement within restrictive facilities.

(Doc. 1 at 13, ¶ 56.) Plaintiff has plausibly alleged that the Howard Center contracted

with the State of Vermont to provide screening and placement services for the protection

of individuals presented for screening. Because Plaintiff would have allegedly avoided

physical injury if the Howard Center had screened him properly, under § 324A the

Howard Center owed him a duty to "exercise reasonable care" in providing its services.

*See* Restatement (Second) of Torts § 324A (providing that an actor who contracts to

provide services is "subject to liability to [a] third person for physical harm resulting

from his failure to exercise reasonable care" in providing those services if the actor's

"failure to exercise reasonable care increases the risk of such harm").

Plaintiff argues that notwithstanding its repeal, CVR 13-100-03 applies in this case

because Health Grant No. 03420-81040 cites the rule and the grants are cited in his

Complaint. *See Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) ("It is well

established that documents that are attached to the complaint or incorporated in it by

reference are deemed part of the pleading and may be considered.") (alteration adopted

and internal quotation marks omitted). Alternately, he contends that the Howard Center

"knew or should have known that it had a duty to him as a vulnerable person" because of

its pre-existing relationship with him as a health care provider. (Doc. 1 at 13, ¶ 53.) The

Vermont Supreme Court has recognized that a physician has a duty of "due ordinary care

for the safety of his [or her] patient[.]" *Largess v. Tatem*, 291 A.2d 398, 402 (Vt. 1972);

*Hartnett v. Med. Ctr. Hosp. of Vt.*, 503 A.2d 1134, 1138 (Vt. 1985) ("To be actionable as

negligence, an error in [a defendant doctor's] judgment must be inconsistent with the

defendant's duty to exercise due care."); *White v. Harris*, 2011 VT 115, ¶ 7, 190 Vt. 647,

648, 36 A.3d 203, 205 (observing that "[t]he doctor had a duty of due care in his

professional contact with decedent"). Taking Plaintiff's allegation that the Howard

Center "had an existing relationship as a care provider to [Plaintiff]" as true, he plausibly

alleges that the Howard Center owed him a duty of care as his current treatment provider.
(Doc. 1 at 12-13, ¶ 53.)

When a court finds a common law duty, the scope of that duty "is determined by
the foreseeability of the consequences of an individual's acts or omissions." *Edson v.
Barre Supervisory Union No. 61*, 2007 VT 62, ¶ 10, 182 Vt. 157, 161, 933 A.2d 200,
204. The common law does not "hold[] individuals liable in negligence for consequences
that a reasonably prudent person could not have foreseen or anticipated under the
circumstances." *Id.* "In general, crimes committed by a third party fall within the realm of
the unforeseeable, and therefore cannot form the basis for liability[,]" unless "the
defendant had special knowledge or notice which would allow it to anticipate the
wrongful act." *Stopford v. Milton Town Sch. Dist.*, 2018 VT 120, ¶ 17, 209 Vt. 171, 180,
202 A.3d 973, 981 (alteration and internal quotation marks omitted) (quoting *Edson*,
2007 VT 62, ¶ 13, 182 Vt. at 162, 933 A.2d at 205); *see also Lexington Ins. Co. v.
Rounds*, 349 F. Supp. 2d 861, 866 (D. Vt. 2004) ("Knowledge of danger on the part of
the actor is vital to the creation of the duty to exercise care in any given situation where
injury to the person or property of others is at stake.") (internal quotation marks omitted
(quoting *Thompson v. Green Mountain Power Corp.*, 144 A.2d 786, 789 (Vt. 1958)).
Whether a duty exists to protect a party from a third party is a question of law. *See
Montague*, 2019 VT 16, ¶¶ 14-15, 209 Vt. at 520-21, 208 A.3d at 614 (observing that
"[t]he existence of a duty is a question of law to be decided by the court" and "[t]here is
generally no duty to protect another from the actions of a third person").

Plaintiff alleges, upon information and belief, that "there are numerous people
who have been brought to the Howard Center's facilities for 'incap' assistance who have
been likewise refused, without any proper effort or basis, and ended up being
incarcerated and having 'accidental injuries.'" (Doc. 1 at 38, ¶ 163.) He does not,
however, plausibly allege that the Howard Center knew that *he* would be taken to a
correctional facility if turned away. Section 4810 provides that law enforcement may also
take an incapacitated person to the hospital as an alternative to a substance abuse
treatment center, lockup, or correctional center. *See* 18 V.S.A. § 4810(c) (providing that

an incapacitated person "shall be taken to the nearest licensed general hospital emergency room for treatment" if a substance abuse treatment center is at capacity); *id.* § 4810(d) (providing that an incapacitated person held in protective custody "if and only if" he refuses treatment or no approved treatment program or provider at the "nearest licensed general hospital" will accept him for treatment). Plaintiff therefore fails to plausibly allege that the Howard Center "had special knowledge or notice upon which to impose a duty to anticipate the wrongful act" or otherwise could have reasonably foreseen that he would be assaulted by correctional officers. *Compare Edson*, 2007 VT 62, ¶ 13, 182 Vt. at 162, 933 A.2d at 205 (holding defendant had no legal duty to prevent student's death where it was "a result of the premeditated criminal act of a third party" and defendant "did not have the requisite knowledge or notice of [the] murder to bring it within the realm of the foreseeable"), *with Sabia v. State*, 669 A.2d 1187, 1195-96 (Vt. 1995) (concluding state agency had duty to anticipate continued sexual abuse of two sisters by their stepfather where it had received multiple reports of the abuse).

Absent allegations that the Howard Center could have reasonably foreseen the VDOC officers' alleged assaultive conduct, it had no legal duty to protect Plaintiff from harm. Accordingly, the court DISMISSES Plaintiff's negligence claim against the Howard Center (Count VIII) for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[7]

**G.    Whether Plaintiff Plausibly Alleges a Claim for Breach of Fiduciary Duty Against the Howard Center.**

The Vermont Supreme Court has observed that breach of fiduciary claims "are

---

[7] The Howard Center argues for the first time in its reply brief that Plaintiff's negligence claim must also be dismissed because he failed to attach a certificate of merit to his Complaint as required by 12 V.S.A. § 1042. Vermont law requires a plaintiff to file a certificate of merit "simultaneously with the filing of the complaint" in civil actions "filed to recover damages resulting from personal injury or wrongful death . . . [which] resulted from the negligence of a health care provider[.]" 12 V.S.A. § 1042(a). Failure to file the certificate of merit "shall be grounds for dismissal of the action without prejudice, except in the rare instances in which a court determines that expert testimony is not required to establish a case for medical malpractice." *Id.* § 1042(e). To the extent that Plaintiff's negligence claim rests on the Howard Center's duty of care to him as a health care provider, Plaintiff's failure to file a certificate of merit provides an alternate basis for dismissal of that claim.

distinct from ordinary negligence claims and rest on different elements of proof." *Sutton*, 2019 VT 71A, ¶ 75, 212 Vt. at 612, 238 A.3d at 637. Under Vermont law, "the existence or nonexistence of a [fiduciary] duty is a question of law to be decided by the court." *McGee v. Vt. Fed. Bank, FSB*, 726 A.2d 42, 44 (Vt. 1999).

A fiduciary relationship arises "when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Handverger v. City of Winooski*, 2011 VT 134, ¶ 11, 191 Vt. 84, 88-89, 38 A.3d 1158, 1161 (adopting Restatement (Second) of Torts § 874 cmt. a (1979) definition) (internal quotation marks omitted). The relationship "must have 'ripen[ed] into one in which [one party was] dependent on, and reposed trust and confidence in [the other party] in the conduct of its affairs.'" *Ascension Tech. Corp. v. McDonald Invs., Inc.*, 327 F. Supp. 2d 271, 276 (D. Vt. 2003) (quoting *McGee*, 726 A.2d at 44) (alterations in original).

Plaintiff alleges that the Howard Center's receipt of taxpayer funding to provide substance abuse treatment services created a fiduciary duty between himself and the Howard Center and that the Howard Center breached that duty by failing to screen him properly and to "prevent the imprisonment and harm of people like [him]." (Doc. 1 at 39, ¶ 171.) Vermont courts are reluctant to recognize fiduciary duties outside of certain special relationships.[8]

---

[8] *Compare Carr v. Peerless Ins. Co.*, 724 A.2d 454, 475 (Vt. 1998) ("The power of attorney created an agency relationship that placed [the defendant] in a fiduciary relationship with plaintiff."), *J.A. Morrissey, Inc. v. Smekjal*, 2010 VT 66, ¶ 11, 188 Vt. 245, 252, 6 A.3d 701, 706-07 (finding existence of fiduciary duty to company as its vice-president and corporate director were "undisputed"), *and Est. of Alden v. Dee*, 2011 VT 64, ¶ 17, 190 Vt. 401, 409, 35 A.3d 950, 956 ("A trustee is a fiduciary[.]"), *with Fuller v. Banknorth Mortg. Co.*, 788 A.2d 14, 17 (Vt. 2001) (collecting cases and observing that a borrower-lender relationship is insufficient to create fiduciary duty), *and Foster and Gridley v. Winner*, 740 A.2d 1283, 1287 (Vt. 1999) (noting that a real estate broker's fiduciary duty terminated after sale of property because "the duty of loyalty does not survive termination of an agent's employment"); *see also Doe v. Newbury Bible Church*, 2005 WL 1862118, at *6 (D. Vt. July 20, 2005), *report & recommendation adopted*, 2005 WL 1962260 (D. Vt. Aug. 15, 2005) (observing that "claims for breach of fiduciary duty [under Vermont law] generally involve fraud, bad-faith self-dealing, conflict of interest, or a failure to disclose information") (citing *McGee*, 726 A.2d at 44; *Cooper v. Cooper*, 783 A.2d 430, 436-37 (2001)).

32

Plaintiff does not plausibly allege that the Howard Center's receipt of federal and state funding imposed an obligation to manage funds or resources on his behalf or "to act for or to give advice for" Plaintiff's benefit. Restatement (Second) § 874. Although a special relationship may "dictate[] the application of a heightened duty of care" in the context of a negligence claim,[9] Plaintiff alleges he never left the police cruiser when he was transported to the Public Inebriate Center. He does not assert that the Howard Center acted as his agent or that "[t]he close relationship of trust and confidence necessary to establish a fiduciary relationship" existed between the parties. *TBF Fin., LLC v. Gregoire*, 2015 VT 36, ¶ 36, 198 Vt. 607, 623, 118 A.3d 511, 522. His allegations that he was a patient of the Howard Center may suffice if his harm was caused in the course of the provision of treatment, but it was not. He cites no authority for the proposition that the Howard Center's alleged fiduciary duty existed outside a treatment setting.

Because Plaintiff fails to plausibly allege the Howard Center owed him a fiduciary duty, he cannot state a claim for breach of that duty. The court therefore GRANTS the Howard Center's motion to dismiss Plaintiff's breach of fiduciary duty claim (Count IX).

## H.   Whether Plaintiff May Amend His Complaint.

Plaintiff may only amend his Complaint "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The court must "freely give leave when justice so requires." *Id.* However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). "[T]he standard for

---

[9] *See Stopford v. Milton Town Sch. Dist.*, 2018 VT 120, ¶ 12, 209 Vt. 171, 178, 202 A.3d 973, 979 (finding "no special relationship between a school district and its student population" in a negligence action against the district); *Lenoci v. Leonard*, 2011 VT 47, ¶ 15, 189 Vt. 641, 644, 21 A.3d 694, 699 (holding no special relationship between two teenage friends in negligence action against one of the teenagers); *Peck v. Counseling Serv. of Addison Cnty., Inc.*, 499 A.2d 422, 425 (Vt. 1985) (holding "the relationship between a clinical therapist and his or her patient is sufficient to create a duty to exercise reasonable care to protect a potential victim of [the patient's] conduct" and reversing judgment in negligence action) (internal quotation marks omitted).

denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). Amendment is futile where there is a substantive problem with a cause of action that cannot be cured by better pleading. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Leave to amend would be futile with respect to Plaintiff's claims against VDOC and his § 1983 claims against Defendants Rowden, Tuttle, and Beyor in their official capacities, which are barred by sovereign immunity. Better pleading will not cure this deficiency. Defendants have not, however, demonstrated that amendment of Plaintiff's remaining claims would be futile, in bad faith, or cause undue delay or prejudice to them. The court therefore GRANTS IN PART Plaintiff's request for leave to amend his Complaint.

In repleading, Plaintiff should avoid inflammatory language and should not include an introduction in a narrative style. Fed. R. Civ. P. 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Sall v. Greater Burlington YMCA*, 2022 WL 703323, at *3 (D. Vt. Mar. 9, 2022) (cautioning against narrative form of pleading); *Chennareddy v. Dodaro*, 697 F. App'x 704, 706 (D.C. Cir. 2017) (dismissing complaint that "is lengthy[] [and] has a narrative, argumentative style") (internal quotation marks omitted). Plaintiff must file his Amended Complaint within thirty (30) days of this Opinion and Order.

## CONCLUSION

For the foregoing reasons, Defendant Mosher's partial motion to dismiss (Doc. 22) is GRANTED IN PART and DENIED IN PART; Defendants Vermont Department of Corrections, Beyor, Rowden II, and Tuttle's motion to dismiss (Doc. 28) is GRANTED IN PART and DENIED IN PART; and the Howard Center's motion to dismiss (Doc. 29) is GRANTED. Count VI as to the Vermont Department of Corrections and Counts I, II, and III against Defendants Rowden, Tuttle, and Beyor in their official capacities are DISMISSED. The court GRANTS IN PART Plaintiff's request for leave to amend the Complaint. Plaintiff may amend his Complaint within thirty (30) days with regard to the

34

following claims:

1. Counts I, II, III as to Defendants Rowden, Tuttle, and Beyor in their individual capacities;

2. Counts V and VII as to Defendants Rowden, Tuttle, and Beyor;

3. Count III as to Defendant Mosher; and

4. Counts VIII and IX as to Howard Center.

Failure to amend shall result in dismissal of the foregoing claims in addition to those claims the court dismisses herein.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 6th day of June, 2023.

Christina Reiss, District Judge
United States District Court